CARROLL, Appellee,

v.

ALLSTATE INSURANCE COMPANY, Appellee; Nationwide
Mutual Insurance Company, Appellant.

[Cite as *Carroll v. Allstate Ins. Co.*, 148 Ohio App.3d 413, 2002-Ohio-3074.]

Court of Appeals of Ohio,
Fifth District, Holmes County.

No. 01 CA 27.

Decided June 14, 2002.

Gibbs & Associates and Richard P. Gibbs, for appellee Allen D. Carroll.

Williams, Sennett & Scully Co., L.P.A., and Adam E. Carr, for appellee Allstate Insurance Company.

Weston Hurd Fallon Paisley & Howley, L.L.P., Timothy D. Johnson and Gregory E. O'Brien, for appellant Nationwide Mutual Insurance Company.

WISE, Judge.

{¶ 1} Appellant Nationwide Mutual Insurance Company ("Nationwide") appeals the decision of the Holmes County Court of Common Pleas that granted Allstate Insurance Company's motion for summary judgment on its cross-claim against Nationwide and denied Nationwide's motion for summary judgment against Allstate. The following facts give rise to this appeal.

{¶ 2} On April 27, 1997, Vera Carroll sustained fatal injuries in an automobile accident on U.S. 62 in Berlin Township. At the time of the accident, the decedent was riding as a passenger in a vehicle owned by her husband, Ivan Carroll. The decedent's daughter, Marline Carroll, was driving the vehicle when Nancy

Weibrecht negligently crossed left of center and struck the decedent's vehicle. Weibrecht was insured by State Farm Insurance Company and had liability limits of $100,000 per person and $300,000 per accident. State Farm Insurance Company paid its entire $100,000 per-person accident limits, which the Stark County Probate Court determined should be disbursed to Ivan Carroll.

{¶ 3} At the time of her death, the decedent had a policy of insurance with Nationwide. The Nationwide policy provided underinsured motorist coverage of $100,000 per person and $300,000 per accident. Also on the date of the accident, appellee Allen Carroll, the adult non-resident son of the decedent, had a policy of insurance with Allstate. This policy provided underinsured motorist coverage of $100,000 per person and $300,000 per accident. Allstate originally denied coverage to appellee Carroll but subsequently paid to him its per-person limits of $100,000.

{¶ 4} On September 18, 2000, appellee Carroll filed this declaratory judgment action against Nationwide and Allstate, asking the Holmes County Court of Common Pleas to declare that he is entitled to underinsured motorist coverage for the wrongful death of his mother under both the Nationwide policy issued to his parents and the Allstate policy issued directly to him. Allstate filed a cross-claim against Nationwide alleging Nationwide's underinsured motorist coverage was primary to its own.

{¶ 5} All parties filed cross-motions for summary judgment. The trial court granted appellee Carroll's motion for summary judgment and denied Nationwide's motion for summary judgment. The trial court concluded that appellee Carroll was entitled to underinsured coverage of $100,000 under the Allstate policy and $100,000 under the Nationwide policy. Judgment Entry, Sept. 26, 2001, at 2. The trial court also concluded that Nationwide's coverage is primary and Allstate's coverage is excess. Finally, the trial court granted Allstate's motion for summary judgment on its cross-claim against Nationwide and declared Allstate subrogated against Nationwide to the extent of the $100,000 paid under the Allstate policy.

{¶ 6} Nationwide timely filed a notice of appeal and sets forth the following assignments of error for our consideration:

{¶ 7} "I. The trial court erred in granting summary judgment for plaintiff because he was neither an 'insured' under his parents' Nationwide policy, nor an 'uncompensated' wrongful death statutory beneficiary."

{¶ 8} "II. The trial court erred in granting summary judgment for plaintiff and holding that the Nationwide policy does not clearly and unambiguously limit all derivative claims for the wrongful death of Vera Carroll to a single 'per person' limit as permitted by R.C. § 3937.18(H)."

{¶ 9}  "III.  The trial court erred in granting summary judgment for plaintiff and refusing to permit Nationwide to setoff against its UM/UIM limits, the amount paid by the tortfeasor and collectively received by Vera Carroll's statutory beneficiaries for her wrongful death.

{¶ 10}  "IV.  The trial court erred in granting summary judgment for plaintiff and holding that he is entitled to UM/UIM coverage under his parents' Nationwide policy, up to the 'per person' limit.

{¶ 11}  "V.  The trial court erred in granting summary judgment for Allstate on its cross-claim and holding that Nationwide's coverage is primary and Allstate's coverage is excess.

{¶ 12}  "VI.  The trial court erred in granting summary judgment for Allstate on its cross-claim and holding that Allstate is subrogated against Nationwide to the extent of the $100,000 already paid under the Allstate policy.

{¶ 13}  "VII.  The trial court erred in granting summary judgment for plaintiff against Nationwide and for Allstate on its cross-claim as the judgment entry and orders produce inconsistent and inequitable results."

## Summary Judgment Standard

{¶ 14}  Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.  *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212.  As such, we must refer to Civ.R. 56(C) which provides:

{¶ 15}  "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the his favor.  * * *"

{¶ 16}  Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed.  The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case.  The moving party must specifically point to some evidence

which demonstrates the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. It is based upon this standard that we review Nationwide's assignments of error.

## I

{¶ 17} In its first assignment of error, Nationwide contends the trial court erred when it declared appellee Carroll entitled to underinsured motorist coverage under a policy of auto insurance issued to appellee Carroll's parents because appellee is not an "insured" under the policy nor an uncompensated wrongful death statutory beneficiary. We disagree.

{¶ 18} In concluding that appellee Carroll was entitled to underinsured motorist coverage under the Nationwide and Allstate policies of automobile insurance, the trial court relied on the cases of *Holt v. Grange Mut. Cas. Co.* (1997), 79 Ohio St.3d 401, 683 N.E.2d 1080 and *Littrell v. Wigglesworth* (2001), 91 Ohio St.3d 425, 746 N.E.2d 1077. We find the Ohio Supreme Court's decision in *Holt* dispositive of this assignment of error.

{¶ 19} In *Holt,* Gawain Holt was killed in a motor vehicle accident with an underinsured motorist. *Holt* at 402, 683 N.E.2d 1080. The decedent and his wife, Ingrid Holt, were the named insureds under a policy issued by Grange Mutual Casualty Company ("Grange"). Id. The policy provided uninsured/underinsured motorist coverage with limits of $250,000 per person and $500,000 per accident. Id. Pursuant to the policy, Grange paid $250,000 to the estate of Gawain Holt. Id.

{¶ 20} The decedent's wife, as executor of her husband's estate, sought recovery under Grange's underinsured motorist policy provision on behalf of her two adult sons. Grange denied coverage on the basis that neither son met the definition of an "insured" under the policy. Both the trial court and the court of appeals found coverage available for the wrongful death claims of the two sons because the contractual provision defining who is an "insured" was "an impermissible restriction on the insurance coverage which is mandated by R.C. 3937.18." *Holt* at 403, 683 N.E.2d 1080.

{¶ 21} Due to a conflict among the appellate districts on this issue, the following question was certified to the Ohio Supreme Court:

{¶ 22} "* * * [W]hether a wrongful death claimant who is a statutory beneficiary of an insured decedent can recover under the uninsured [/underinsured]

motorist provisions of the decedent's insurance policy if [the wrongful death claimant] is not a named insured under the policy." Id. at 404, 683 N.E.2d 1080.

{¶ 23} In affirming the decision of the court of appeals, the court explained:

{¶ 24} "* * * [Grange] attempts to invoke a policy restriction that actually is inapplicable to the circumstances of this case, as the claims of the sons must be recognized as a matter of law. Consequently, [Grange's] attempt to rely on the definition of an 'insured' to support its denial of coverage is ineffective to accomplish that purpose, since [Grange's] obligation to provide coverage arises due to the fact that an 'insured' party has suffered a wrongful death." Id.

{¶ 25} The court based its conclusion upon the interplay between the uninsured/underinsured motorist statute and the wrongful death statutes. The court explained:

{¶ 26} "Coverage for the wrongful death claims of statutory beneficiaries must be part and parcel of the uninsurance/underinsurance coverage of the decedent's policy. The wrongful death claims are inseparably bound to the insured decedent's wrongful death, and the only way to reconcile the requirements of former R.C. 3937.18(A) and R.C. Chapter 2125 is to require coverage." Id. at 408, 683 N.E.2d 1080.

{¶ 27} Thus, "[d]ue to the special nature of a wrongful death claim, the concept of privity is inapplicable. It is sufficient that the *decedent* was in privity with the underinsurance carrier for coverage to be available." (Emphasis sic.) Id. at 410, 683 N.E.2d 1080. The court concluded in holding:

{¶ 28} "An uninsured/underinsured motorist coverage provider's use of restrictive policy language defining an 'insured' is ineffectual to exclude from coverage the claim of an uncompensated wrongful death statutory beneficiary seeking to recover under the uninsurance/underinsurance provision of the decedent's policy, since the correct focus for wrongful death recovery under a decedent's policy of uninsured/underinsured coverage is whether the *decedent* was an 'insured.'" (Emphasis sic.) Id. at paragraph three of the syllabus.

{¶ 29} In the case sub judice, Nationwide maintains that the trial court incorrectly interpreted the Ohio Supreme Court's decision in the *Holt* case when it concluded that appellee Carroll is an uncompensated wrongful death statutory beneficiary of the insured decedent and therefore, entitled to underinsured motorist benefits under the Nationwide policy issued to Vera and Ivan Carroll. Nationwide argues that since appellee Carroll received underinsured motorist benefits through his policy with Allstate, his claim differs from the claim in *Holt* because he is not uncompensated. Thus, Nationwide concludes that in order to recover under the policy it issued to Ivan and Vera Carroll, appellee Carroll must meet the definition of an "insured."

{¶ 30} We do not believe that he case law supports Nationwide's argument. Nationwide does not cite any case law that has interpreted *Holt* to mean that once a statutory beneficiary receives some compensation for the wrongful death of a decedent, he or she is precluded from seeking recovery under the decedent's uninsurance/underinsurance provision of the policy. Instead, we interpret the *Holt* decision to mean that due to the special nature of a wrongful death claim, a wrongful death statutory beneficiary has a right to seek coverage under the decedent's uninsurance/underinsurance provision of the policy even though the statutory beneficiary has already received compensation as a result of the decedent's death.

{¶ 31} The Supreme Court noted in *Holt*: "It [would be] absurd to prevent recovery for a wrongful death beneficiary by excluding him or her from the status of an 'insured' when R.C. Chapter 2125 expressly recognizes that he or she has suffered damages due to the wrongful death." *Holt* at 408, 683 N.E.2d 1080. Thus, although appellee Carroll is not an "insured" under Nationwide's policy of insurance, he is an uncompensated wrongful death statutory beneficiary in that he has not received any compensation from the uninsurance/underinsurance provision of the tortfeasor's policy.

{¶ 32} Accordingly, we overrule Nationwide's first assignment of error.

## II

{¶ 33} In its second assignment of error, Nationwide contends that the trial court erred when it concluded that Nationwide's policy does not clearly and unambiguously limit all derivative claims for Vera Carroll's wrongful death to a single "per person" limit. We agree.

{¶ 34} In support of this assignment of error, Nationwide cites *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 744 N.E.2d 719. In *Clark*, the Ohio Supreme Court stated:

{¶ 35} "R.C. 3937.18(H) permits automobile liability insurers to include provisions in their insurance policies that consolidate all individual wrongful death claims arising out of any one person's bodily injury into a single claim and thereby limit all wrongful death damages to a single per-person policy limit. This consolidation must affirmatively appear in the policy, *i.e.*, insurers must include language within their policies of insurance that clearly and unambiguously consolidates such claims in order to give effect to such a limit. [Citation omitted.] In addition, it is well settled that '[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." (Citation omitted.) Id. at 282, 744 N.E.2d 719.[1]

---

1. {¶ a} R.C. 3937.18(H) provides as follows:

{¶ 36} Further, "[i]n attempting to limit wrongful death damages, insurers are not required to use the exact wording set forth in R.C. 3937.18(H) or any other specific language." Id. The language at issue, in Nationwide's policy, provides as follows:

{¶ 37} **"LIMITS OF PAYMENT**

{¶ 38} "Amounts Payable For Uninsured Motorists Losses

{¶ 39} "We agree to pay losses up to the limits stated in the policy Declarations. The following applies to these limits:

{¶ 40} "1. The bodily injury limit shown for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to bodily injury to one person as a result of one occurrence.

{¶ 41} "The per-person limit is the total amount available when one person sustains bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims or any other claims made by anyone arising out of bodily injury, including death, to one person as a result of one occurrence.

{¶ 42} "Subject to this 'per person' limit, the total limit of our liability shown for each occurrence is the total amount available when two or more persons sustain bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of bodily injury, including death, to two or more persons as a result of one occurrence."

{¶ 43} In relying on the case of *Nicolini–Brownfield v. Eigensee* (Sept. 16, 1999), Franklin App. Nos. 98AP–1243, 98AP–1244, 1999 WL 717308, the trial court concluded that the above language, contained in Nationwide's policy, does not limit all derivative claims for wrongful death to a single split-limit, but merely limits each individual derivative claim to a single split-limit. Judgment Entry, Sept. 26, 2001, at 2. Although the language at issue in the *Nicolini–Brownfield*

---

{¶ b} "Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section or selected in accordance with division (C) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.

case involved the identical language under consideration in the case sub judice, we disagree with the Tenth District Court of Appeals' conclusion.

{¶ 44}  In reaching this conclusion, we recognize that Ohio law liberally construes the language of an insurance contract in favor of the insured.  *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 122, 647 N.E.2d 1358.  Further, where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, such provisions will be strictly construed against the insurer.  *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 664, 710 N.E.2d 1116.  We do not find that the "Limits of Payment" language contained in Nationwide's policy of insurance is susceptible of more than one interpretation thereby requiring us to construe this language against Nationwide.  We reach this conclusion for the following reasons.

{¶ 45}  First, in *Marline Carroll v. Nationwide Mut. Ins. Co.* (Nov. 30, 2000), Holmes App. No. 99CA016, 2000 WL 1781332, this court previously determined that the above language "clearly and unambiguously limited all uninsured and underinsured claims resulting from or arising out of one bodily injury to a single 'per person' claim in accordance with R.C. 3937.18(H)."  Id. at 8.

{¶ 46}  Although our decision in *Marline Carroll* was eventually overruled by the Ohio Supreme Court pursuant to *Littrell* and *Clark*, the court's reason for the reversal was on the issue of how to interpret, for purposes of setoff, "amount available for payment" language contained in R.C. 3937.18(A)(2).  The Ohio Supreme Court did not conclude that we erred in finding all uninsured and underinsured claims limited to a single per-person claim in accordance with R.C. 3937.18(H).  As such, we conclude, as we did in the *Marline Carroll* case, that the language contained in Nationwide's policy clearly and unambiguously limits all derivative claims for Vera Carroll's death to a single per-person limit.

{¶ 47}  Second, we find persuasive that at least two other jurisdictions that have interpreted the exact language under consideration in this appeal have determined that the language clearly and unambiguously limited all derivative claims to a single per-person limit.  See *Brown v. Saliba* (June 28, 2000), Noble App. No. 264, at 5, 2000 WL 875362; *Izev v. Nationwide Mut. Ins. Co.* (Nov. 17, 1999), Medina App. No. 2865–M, at 4, 1999 WL 1059661, overruled on other grounds (2000), 88 Ohio St.3d 507, 727 N.E.2d 1287.

{¶ 48}  Finally, in the recent Ohio Supreme Court case of *Wallace v. Balint* (2002), 94 Ohio St.3d 182, 761 N.E.2d 598, the court discussed whether wrongful death statutory beneficiaries are separately entitled to coverage up to the per-person limit of available underinsured motorist policies or whether the beneficiaries are limited to a single claim at the per-person limit.

{¶ 49} In addressing this issue, the court referred to its previous decision in *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 723 N.E.2d 97. In *Moore,* the court held: "R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer." Id. at syllabus.

{¶ 50} In *Wallace,* the court clarified that it "did not hold in *Moore* that as a result of a wrongful-death claim, * * * [the wrongful death statutory beneficiaries] were individually entitled to coverage at the per-accident limit of an underinsured motorist policy." *Wallace* at 188, 761 N.E.2d 598. Rather, a policy containing the limiting language of R.C. 3937.18(H) limits recovery by wrongful death statutory beneficiaries to the per-person limit. Id.

{¶ 51} Accordingly, we find that the trial court erred when it concluded that Nationwide's underinsured policy language does not clearly and unambiguously limit all derivative claims for the wrongful death of Vera Carroll as permitted by R.C. 3937.18(H).

{¶ 52} Nationwide's second assignment of error is sustained.

III

{¶ 53} In its third assignment of error, Nationwide contends that it is entitled to a setoff, against its policy limits, in the amount equal to the damages paid by the tortfeasor for the wrongful death of Vera Carroll. We agree.

{¶ 54} R.C. 3937.18(A)(2) requires an insurer providing underinsured motorist coverage to setoff, from its policy limits, any sum available for payment from the tortfeasor. This section of the statute specifically provides:

{¶ 55} "* * * The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

{¶ 56} In *Clark,* the Ohio Supreme Court addressed the meaning of the phrase "amounts available for payment." The court held that for purposes of setoff, "* * * the 'amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." *Clark* at syllabus.

{¶ 57} The court explained that "when determining whether a motorist is underinsured, the *amount actually available for payment* under the tortfeasor's policy must be compared with the insured's underinsured motorist coverage

limits." (Emphasis sic.) Id. at 277, 744 N.E.2d 719. That is, "those amounts the insured actually recovers from a tortfeasor whose liability policy is subject to the claim of the insured and also to the claims of other injured persons." Id. at 276, 744 N.E.2d 719. "If the amount *available for payment* is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage." (Emphasis sic). Id. at 277, 744 N.E.2d 719.

{¶ 58} Further, based upon our reading of the *Clark* and *Littrell* cases, in determining setoff, we must also consider whether recovery is sought under a single policy or multiple policies. The multiple-policies issue arises when recovery is sought under separate policies of insurance. See *Littrell* at fn. 7. The final issue that must be considered in determining setoff is whether the policy, under which coverage is sought, contains limiting language pursuant to R.C. 3937.18(H).

{¶ 59} We will proceed to address the above concepts, as discussed by the Ohio Supreme Court in case law, in the context of single policy and multiple policies scenarios.

## A.   Single–Policy Analysis

{¶ 60} The single-policy issue occurs when one or more wrongful death statutory beneficiary seeks to recover under a single policy of insurance. In this scenario, each wrongful death statutory beneficiary has a separate wrongful death underinsurance claim subject to a separate per-person limit, with the total of all claims subject to the policy's per-accident limit. See *Holt* at fn. 2. However, under this scenario, if more than one wrongful death claim is made, the claims may be limited to a single per-person limit if the limiting language contained in R.C. 3937.18(H) is contained in the policy.

{¶ 61} If the limiting language is not contained in the policy, each wrongful death statutory beneficiary has a separate per-person limit and the amount available for payment is compared to the separate per-person limit. If the amount available for payment is less than the per-person limit, each wrongful death statutory beneficiary is entitled to collect the difference up to the separate per-person limit. However, if the limiting language of R.C. 3937.18(H) is contained in the policy of insurance, then the claims of the wrongful death statutory beneficiaries are limited to a single per-person limit, and the amount available for payment is compared to the single per-person limit. If the amount available for payment is less than the single per-person limit, then the wrongful death statutory beneficiaries, as an aggregate, are entitled to collect up to the single per-person limit.

{¶ 62} The Ohio Supreme Court addressed the single-policy issue in the cases of *Clark, Littrell,*[2] and *Stickney v. State Farm Mut. Auto. Ins. Co.* (2001), 91 Ohio

---

2.  In *Littrell,* the single-policy analysis applies only to the five occupants of the Pratt vehicle. It does not apply to Ernie Pratt, the grandson of one of the decedent's involved in the accident.

St.3d 425, 746 N.E.2d 1077. In *Clark*, the decedent's mother, Cheryl Clark, sought wrongful death damages on behalf of herself and other statutory wrongful death beneficiaries under a policy of insurance issued to her by Mid–Century Insurance Company ("Mid–Century"). Id. at 271–272, 744 N.E.2d 719. Subsequently, the tortfeasor's liability carrier settled with Clark for the $100,000 per-person limit and Clark dismissed all claims against the tortfeasor. Id.

{¶ 63} On appeal to the Ohio Supreme Court, the court determined that Clark and the other wrongful death statutory beneficiaries were not entitled to underinsurance proceeds from the Mid–Century policy. In reaching this conclusion, the court made the following analysis. The court compared the amount actually received from the tortfeasor, $100,000, which was the amount available for payment, to the single per-person limit of Clark's underinsured motorist coverage, which was also $100,000. Id. at 272, 744 N.E.2d 719. The Court determined that the Mid–Century policy clearly and unambiguously restricted all wrongful death claims to the single per-person limit pursuant to R.C. 3937.18(H). Id. at 273, 744 N.E.2d 719. The Court then proceeded to set off the amount received from the tortfeasor's liability carrier against the per-person limit of Clark's policy with Mid–Century, which precluded recovery by the wrongful death statutory beneficiaries. Id.

{¶ 64} In the *Littrell* case, the single-policy issue arose as to the five occupants of the Pratt vehicle. Westfield Insurance Company ("Westfield") insured all five occupants of the vehicle. *Littrell* at 431, 746 N.E.2d 1077. The policy provided underinsured motorist coverage with a single policy limit of $500,000 per accident. Id. Thus, had the tortfeasor been uninsured, the maximum amount available to the five occupants would have been $500,000. Id. The amount available for payment from the tortfeasor was $1,300,000. Id. Since this amount exceeded the amount available for payment from the Westfield policy, the five occupants of the vehicle were not entitled to underinsured motorist benefits from Westfield. Id.

{¶ 65} The final case that illustrates the single-policy analysis is the *Stickney* case. In *Stickney*, Mr. Stickney received $125,000 from the tortfeasor's liability carrier toward his damages resulting from the death of his daughter. *Stickney* at 433, 746 N.E.2d 1077. Mr. Stickney's wife and surviving children did not receive any share of the settlement proceeds. Id. At the time of the accident, State Farm Mutual Automobile Insurance Company ("State Farm") insured Mr. Stickney and his family with underinsured motorist coverage limits of $100,000 per person and $300,000 per accident. Id.

---

As to Ernie Pratt, a multiple policy analysis applies when determining setoff under his policy with Allstate.

{¶ 66} Mr. Stickney filed suit against State Farm on behalf of his wife and surviving children. Id. Mr. Stickney argued that his wife and surviving children were entitled to coverage as wrongful death statutory beneficiaries because they did not share in the settlement proceeds from the tortfeasor's liability carrier. Id. In determining the amount of underinsured motorist coverage available to the wrongful death statutory beneficiaries, the Ohio Supreme Court first determined the amount the beneficiaries would have received had their loss resulted from the negligence of an uninsured motorist. Id.

{¶ 67} The State Farm policy contained the limiting language permitted by R.C. 3937.18(H). Id. Thus, had Scott's daughter been killed by an uninsured motorist, the maximum amount that all wrongful death statutory beneficiaries could have recovered in uninsured motorist benefits would have been the $100,000 per-person limit. Id. The amount awarded to Mr. Stickney, $125,000, is the amount available for payment. This amount exceeds that which would be available under State Farm's uninsured motorist coverage and, therefore, the court concluded the statutory wrongful death beneficiaries were not entitled to underinsured motorist benefits from State Farm. Id.

### B. Multiple–Policies Analysis

{¶ 68} The multiple-policies issue occurs when one or more wrongful death statutory beneficiary seeks recovery under a separate policy of insurance. In this scenario, the amount available for payment, which is the amount actually received by each wrongful death statutory beneficiary, is compared to the policy limits of the separate policy of insurance. If the amount available for payment is less than the policy limit contained in the separate policy of insurance, then the beneficiary is entitled to collect the difference.

{¶ 69}The Ohio Supreme Court addressed the multiple-policies issue in the cases of *Littrell* and *Karr v. Borchardt* (2001), 91 Ohio St.3d 425, 746 N.E.2d 1077. The multiple-policies analysis is illustrated in the *Stickney* case as it pertains to Ernie Pratt. Ernie Pratt is the grandson of decedent Stella Pratt, who was one of the five occupants of a vehicle involved in an automobile accident. Id. at 431, 746 N.E.2d 1077. Ernie Pratt filed a claim for underinsured motorist benefits through his automobile liability policy with Allstate Insurance Company ("Allstate"). The Allstate policy provided underinsured motorist coverage with limits of $25,000 per person and $50,000 per accident. Id.

{¶ 70} Ernie received $8,000 in wrongful death proceeds, as next of kin, from the $275,000 paid to the estate of Stella Pratt. Id. at 432, 746 N.E.2d 1077. Had Stella Pratt's death resulted from an accident with an uninsured motorist, Ernie would have had uninsured motorist coverage from his Allstate policy up to the $25,000 per-person limit. Id. The court concluded that because Ernie Pratt had a

separate policy of insurance, he was entitled to underinsured motorist coverage up to the single, per-person limit of his Allstate policy less the $8,000, which were proceeds paid by the tortfeasor. Id.

{¶ 71} The *Karr* case is the second case that illustrates the multiple-policies analysis. In *Karr*, the tortfeasor's liability carrier paid $100,000 to the personal representative of the decedent. *Karr* at 433, 746 N.E.2d 1077. The proceeds were divided equally among the five statutory wrongful death beneficiaries (including Ginger Karr, Vicki Husk, and John Beddow), each receiving $15,660.37. Id. at 433, 746 N.E.2d 1077. Each statutory wrongful death beneficiary sought recovery of underinsurance proceeds under his or her own separate policy of insurance.

{¶ 72} At the time of the accident, Ginger Karr was insured through a policy of automobile liability insurance issued by Progressive Insurance Company, which provided underinsured motorist coverage benefits of $12,500 per person and $25,000 per accident. Id. at 428, 746 N.E.2d 1077. The Ohio Supreme Court concluded that had the decedent been killed by an uninsured motorist, Ginger would have had uninsured motorist coverage up to a maximum amount of $12,500. Id. at 434, 746 N.E.2d 1077. However, since Ginger received more from the tortfeasor than she would have received from her policy with Progressive had the decedent been killed by an uninsured motorist, Ginger was not entitled to underinsured motorist coverage. Id. at 434–435, 746 N.E.2d 1077.

{¶ 73} Vicki Husk sought recovery of underinsurance proceeds from a policy of insurance she had with Allstate Insurance Company ("Allstate"). Id. at 435, 746 N.E.2d 1077. The policy contained underinsured motorist coverage with limits of $100,000 per person and $300,000 per accident. Id. Therefore, Vicki could collect up to the $100,000 per-person limit if the accident had been the fault of an uninsured motorist. Id. Vicki also received $15,660.37 from the tortfeasor, which was less than the per-person limit of her policy with Allstate. Id. Therefore, the court concluded that Vicki was entitled to underinsured motorist coverage up to the per-person limit of her Allstate policy after setting off the amount recovered from the tortfeasor. Id.

{¶ 74} John Beddow sought recovery of underinsurance proceeds from a policy of insurance he had with State Farm Mutual Insurance Company ("State Farm"). Id. The policy provided underinsured motorist coverage with limits of $50,000 per person and $100,000 per accident. John also received $15,660.37 from the tortfeasor. Id. Since John could have collected up to his per-person limit of $50,000 had the tortfeasor been an uninsured motorist, the court determined that John was entitled to underinsured motorist coverage up to the per-person limit of his policy less the amount available for payment from the tortfeasor. Id.

{¶ 75} The facts of the case sub judice require analysis under the single-policy issue as it pertains to the Nationwide policy. In order to determine the amount of underinsured motorist coverage available to appellee Carroll, under the Nationwide policy, as a wrongful death statutory beneficiary, we must first determine the amount that he would have received had his loss resulted from the negligence of an uninsured motorist. Nationwide's policy of insurance contains uninsured motorist coverage of $100,000 per person and $300,000 per accident. According to the *Holt* case, had Vera Carroll been killed by an uninsured motorist, appellee Carroll would have the right to recover the per-person policy limit of $100,000 under the policy issued to his parents.

{¶ 76} However, as we determined in evaluating Nationwide's second assignment of error, the maximum amount that all wrongful death statutory beneficiaries may recover in uninsured motorist benefits, according to Nationwide's policy language, is the per-person limit of $100,000. The record indicates that the amount awarded to Vera Carroll's representative, by the tortfeasor, for the benefit of the next of kin, was $100,000, which is the amount available for payment. Since the amount available for payment is the same that would be available under Nationwide's uninsured motorist coverage, appellee Carroll, as a wrongful death statutory beneficiary, is not entitled to underinsured motorist coverage from Nationwide.

{¶ 77} Allstate contends that because appellee Carroll received nothing from the tortfeasor's liability policy, he is in exactly the same position as he would be if the tortfeasor had been completely uninsured and, therefore, he is entitled to underinsured motorist coverage from Nationwide. Allstate's argument improperly interprets the phrase "amounts available for payment" and ignores the language contained in the policy pursuant to R.C. 3937.18(H). As noted above, the amount available for payment was $100,000, which was the money received from the tortfeasor's insurer. Because this amount is the same as the per-person limit of Nationwide's policy, appellee Carroll is not underinsured and, therefore, is not entitled to collect underinsurance proceeds.

{¶ 78} We conclude that the trial court erred when it found appellee Carroll entitled to recover underinsured motorist proceeds from the Nationwide policy issued to Vera and Ivan Carroll.

{¶ 79} Nationwide's third assignment of error is sustained.

## IV

{¶ 80} Nationwide contends, in its fourth assignment of error, that the trial court erred when it granted summary judgment for appellee Carroll and held that he is entitled to uninsured/underinsured coverage under his parents' policy

with Nationwide up to the per-person limit. We agree with Nationwide's argument, for the reasons stated in the third assignment of error, and sustain the fourth assignment of error.

## V

{¶ 81} In its fifth assignment of error, Nationwide maintains that the trial court erred when it granted summary judgment for Allstate on its cross-claim against Nationwide and held that Nationwide's coverage is primary and Allstate's coverage is excess. We agree.

{¶ 82} Having determined in Nationwide's third assignment of error that appellee Carroll is not entitled to underinsured motorist coverage under the Nationwide policy issued to his parents, Nationwide's coverage cannot be primary to that of Allstate's coverage.

{¶ 83} Appellant's fifth assignment of error is sustained.

## VI

{¶ 84} Nationwide maintains, in its sixth assignment of error, that the trial court erred when it granted summary judgment for Allstate on its cross-claim and held that Allstate is subrogated against Nationwide to the extent of the $100,000 already paid under the Allstate policy. We agree.

{¶ 85} Allstate can only be subrogated against Nationwide to the extent that appellee Carroll is entitled to or receives payment by way of settlement from or judgment against Nationwide. Allstate's auto policy specifically provides as follows:

{¶ 86} "**TRUST AGREEMENT**

{¶ 87} "When we pay any person under this coverage:

{¶ 88} "1. We are entitled to repayment of amounts paid by us and related collection expenses out of the proceeds of any settlement or judgment that person recovers from any responsible party or insurer."

{¶ 89} The Allstate policy allows for repayment only when the insured obtains a judgment from or settles with any responsible party or insurer. In the case sub judice, appellee Carroll has not obtained a monetary judgment or settled with Nationwide. Therefore, Allstate is not entitled to repayment by way of subrogation from Nationwide because Allstate gains no greater right than its insured with respect to its claim against Nationwide. See *Federal Union Life Ins. Co. v. Deitsch* (1934), 127 Ohio St. 505, 510, 189 N.E. 440. Therefore, Allstate is not entitled to judgment against Nationwide in the amount of $100,000.

{¶ 90} Nationwide's sixth assignment of error is sustained.

## VII

{¶ 91} Nationwide argues, in its seventh assignment of error, that the trial court's orders are inconsistent and inequitable because they permit both appellee Carroll and Allstate to separately recover the same damages, for the same loss, from the same defendant.

{¶ 92} We find this assignment of error moot because we previously determined that appellee Carroll is not entitled to underinsured motorist coverage under the policy issued to his parents by Nationwide.

{¶ 93} Nationwide's seventh assignment of error is overruled.

{¶ 94} For the foregoing reasons, the judgment of the Court of Common Pleas, Holmes County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WILLIAM B. HOFFMAN, P.J., and EDWARDS, J., concur.