OPINION
{¶ 1} Defendant-appellant Allstate Insurance Co. ("Allstate") appeals the June 30, 2004 Judgment Entry entered by the Stark County Court of Common Pleas, which granted summary judgment in favor of plaintiffs-appellees Mary Harris, et al., and which denied Allstate's motion for summary judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 24, 1995, Martin Harris, son of appellees Mary and Robert Harris, along with his friend Jeremy Schar and Greg Kneff died of carbon monoxide poisoning while sleeping in a motor home owned by Schar. Schar, the alleged tortfeasor, was uninsured at the time of the incident.
 {¶ 3} On the date of incident, appellee Mary Harris, was a named insured under a personal automobile liability policy issued by Allstate (Policy No. 02643005809/15). The effective dates of the policy were September 15, 1995, to March 15, 1996. The policy provided UM/UIM coverage in the amount of $100,000/person and $300,000/accident. Appellee Amanda Harris, the sister of Martin Harris and the daughter of Mary Harris, was included under her mother's personal automobile liability policy. On the date of the incident, Sarah Harris, another sister of Martin Harris, was a named insured under a personal automobile liability policy also issued by Allstate (Policy No. 09233490108/12). The effective dates of this policy were August 12, 1995, to February 12, 1996. The policy provided UM/UIM coverage in the amount of $100,000/person and $300,000/accident. In addition, Martin Harris was a named insured under a personal automobile liability policy issued by Allstate (Policy No. 09218920006/06), effective June 6, 1995, to December 6, 1995. The policy provided UM/UIM coverage in the amount of $25,000/person and $50,000/accident.[1]
 {¶ 4} Martin Harris was employed by Bedford Anodizing, Inc., which was insured under three policies issued by Westfield Insurance Company, effective July 9, 1995, to July 9, 1996. The first policy, which was a commercial automobile liability policy, provided UM/UIM coverage in the amount of $500,000/accident. The second policy was a commercial umbrella with a $1,000,000 liability limit. The third policy was a commercial general liability policy with a $1,000,000 liability limit. The estate of Martin Harris pursued Scott-Pontzer claims against Westfield, which resulted in a settlement agreement between the parties in the amount of $265,000.
 {¶ 5} On August 6, 2002, appellees filed a Complaint for Declaratory Judgment and UM/UIM benefits, naming Allstate and Westfield as defendants. The UM/UIM claims against Allstate were based upon Sexton andMoore theories of recovery. As noted supra, appellees settled their claims against Westfield for $265,000. Westfield was then dismissed via Judgment Entry filed June 9, 2004.
 {¶ 6} On February 2, 2004, Allstate filed a Motion for Summary Judgment. Appellees filed a Cross-Motion for Partial Summary Judgment on February 22, 2004. Via Judgment Entry filed June 30, 2004, the trial court granted partial summary judgment in favor of appellees and denied Allstate's motion for summary judgment. The trial court specifically found appellees' derivative claims were separately subject to the "each person" limit of the policy, with the total of all claims subject to the "each accident" limit. The trial court further found Allstate was not entitled to set-off any amounts received by the Estate from Westfield. The trial court included Civ. R. 54(B), "no just cause for delay" language in the entry.
 {¶ 7} It is from the June 30, 2004 Judgment Entry Allstate appeals, raising the following assignments of error:
 {¶ 8} "I. The trial court erred by certifying its order of June 30, 2004 granting plaintiffs' motion for summary judgment and denying defendant's motion for summary judgment as final and appealable.
 {¶ 9} "II. The trial court erred in finding that plaintiffs'/appellees' derivative claims are separately subject to the `per person' limit of the policies of insurance at issue.
 {¶ 10} "III. The trial court erred in finding that defendant/appellee [sic] allstate insurance company was not entitled to a setoff."
 Standard of Review {¶ 11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36.
 {¶ 12} Civ.R. 56(C) states, in pertinent part:
 {¶ 13} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 14} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
 {¶ 15} It is based upon this standard we review appellant's assignments of error.
 I {¶ 16} In its first assignment of error, Allstate contends the trial court erred in certifying the June 30, 2004 Judgment Entry as a final appealable order. Allstate explains the trial court never determined whether it was entitled to a set-off under the law, but rather found Allstate was not entitled to a set-off due to a lack of Civ. R. 56 evidence regarding how much each appellee received from the Westfield settlement; therefore, this issue was not resolved. We disagree.
 {¶ 17} A court of appeals only has jurisdiction to review final appealable orders. Chef Italiano Corp. v. Kent State Univ. (1989),44 Ohio St.3d 86, 87. An order which leaves one or more parties or claims pending before the trial court may be final and appealable if it satisfies the requirements of R.C. § 2505.02(B)(2) and Civ.R. 54(B). Wisintainerv. Elcen Power Strut Co. (1993), 67 Ohio St.3d 352, 354.
 {¶ 18} R.C. 2505.02(B)(2) provides:
 {¶ 19} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 {¶ 20} "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment"
 {¶ 21} This Court has previously held a declaratory judgment action is a special proceeding, and has further held a judgment entry in a declaratory judgment action which affects the substantial rights of the parties may be immediately appealed under R.C. § 2505.02(B)(2). Shirleyv. Republic Franklin Ins. Co., 5th Dist. No. 2002CA00261, 2003-Ohio 4116. Accordingly, we find the trial court's June 30, 2004 Judgment Entry, in which the trial court determined Allstate was not entitled to a set-off, constitutes a final appealable order.
 {¶ 22} Allstate's first assignment of error is overruled.
 II {¶ 23} In its second assignment of error, Allstate asserts the trial court erred in finding appellees' derivative claims to be separately subject to the "per person" limit of the policies at issue.
 {¶ 24} In Saunders v. Mortensen, 101 Ohio St.3d 86, 2004-Ohio-24, the Ohio Supreme Court stated: "Former R.C. 3937.18(H) as amended by Am.Sub.S.B. No. 20 in 1994, 145 Ohio Laws, Part I, 204, 212, permitted automobile liability insurers to include provisions in insurance policies that consolidate all claims arising out of any one person's bodily injury into a single claim. Although a policy need not use the exact wording of R.C. 3937.18(H), the language must clearly and unambiguously consolidate such claims in order to give effect to the limit. Clark v. Scarpelli
(2001), 91 Ohio St.3d 271, 282, 744 N.E.2d 719." Id. at para. 14.
 {¶ 25} Allstate's UM/UIM provisions read, in pertinent part:
 {¶ 26} "Limits of Liability
 {¶ 27} "The Uninsured Motorist Coverage — Bodily injury limit stated on the Policy Declarations is the maximum amount payable for this coverage by this policy for any one accident. This means that the insuring of more than one auto for other coverages afforded by this policy will not increase our limit of liability beyond the amount shown on the Policy Declarations.
 {¶ 28} "Regardless of the number of insured autos under this coverage, the specific amount shown on the Policy Declarations for:
 {¶ 29} "1. `each person' is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle
accident, including damages sustained by anyone else as a result of thatbodily injury.
 {¶ 30} "2. `each accident' is the maximum that we will pay for damages arising out of bodily injury to two or more persons in any one motorvehicle accident. This `each accident' limit is subject to the `each person' limit."
 {¶ 31} Bodily injury is defined as "Bodily injury, bodily sickness, bodily disease, or death."
 {¶ 32} Appellees maintain the aforequoted language does not clearly and unambiguously consolidate all claims under the single per person limit of coverage. We disagree.
 {¶ 33} "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." Kingv. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus; Clark v.Scarpelli (2001), 91 Ohio St.3d 271, 282. A contract is to be read as a whole and the intent of each part gathered from a consideration of the whole. Foster Wheeler Enviresponse, Inc. v. Franklin Cty. ConventionFacilities Auth. (1997), 78 Ohio St.3d 353, 361. If it is reasonable to do so, we must give effect to each provision of the contract. ExpandedMetal Fire-Proofing Co. v. Noel Constr. Co. (1913), 87 Ohio St. 428.
 {¶ 34} With these principles in mind, reading the provision in its entirety and giving effect to all parts, we agree with Allstate the UM/UIM Endorsement clearly and unambiguously limits all claims derived from one person's bodily injury to the single perperson limit of the policy. The plain language of the provision states "`each person' is the maximum that we will pay for damages arising out of bodily injury to oneperson * * * including damages sustained by anyone else as a result ofthat bodily injury." (Bold emphasis in original. Underline emphasis added). Although the types of bodily injury are defined elsewhere in the Endorsement, the provision consolidates damages sustained by anyone else as a result into a single claim. Because "death" is included in the definition of "bodily injury", a wrongful death claim would be consolidated into a single claim. The fact the policy uses a broad boundary, "damages sustained by anyone else as a result", rather than specifically denoting wrongful death claims/damages does not make the language unclear or ambiguous. In accord: Carroll v. Allstate,148 Ohio App.3d 413, 2002-Ohio-3074.
 {¶ 35} Accordingly, we find the trial court erred in finding appellees' derivative claims to be separately subject to the per person limit of the policy. Allstate's second assignment of error is sustained.
 III {¶ 36} In its final assignment of error, Allstate asserts the trial court erred in finding it was not entitled to a set-off by the Westfield settlement.
 {¶ 37} The policy language at issue herein provides:
 {¶ 38} "Any amount payable to or for an insured person or additional insured person under this coverage will be reduced by all amounts paid by the owner or operator of the underinsured auto or anyone else legally responsible. This includes all sums paid under the bodily injury liability coverage of this or any other auto policy.
 {¶ 39} Allstate maintains Martin Harris' employer and its insurance company, Westfield, were parties legally responsible; therefore, the Allstate UM/UIM policy should be set-off by the Westfield settlement. Appellees counter the aforementioned policy language relates to payments by tortfeasors or others on the tortfeasor's behalf and does not relate to payments made by other insurance companies. Appellees asserts the set-off provision is inapplicable to the Westfield settlement in the instant action.
 {¶ 40} This Court recently addressed this issue in Savage v. EncompassIns. Co., Fairfield App. No. 04CA39, 2005-Ohio-248. Therein, we analyzed similar language in R.C. 3937.18 and determined it does not require a UM/UIM policy be set-off by amounts available under any other applicable uninsured motorist policy. Id. at para. 25. However, we noted the statute also did not prohibit policy language from requiring such a set-off. Id. at para. 26. Analyzing the policy at issue therein, we found the "by or on behalf of persons or organizations who may be legally responsible" language referred to persons legally liable for the accident. Id. We concluded the policy did not require a set-off of amounts available under other underinsured motorist policies. Id. Analyzing the Allstate policy in the case sub judice, we likewise find it does not specifically provide for set-off of the amount paid by anyone other than those on behalf of the tortfeasor. Accordingly, the trial court did not err in not setting off the Westfield settlement.
 {¶ 41} In accordance with Savage, we overrule Allstate's third assignment of error.
 {¶ 42} The judgment of the Stark County Court of Common Pleas is affirmed in part, reversed in part and remanded.
Hoffman, J., Gwin, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed in part, reversed in part and remanded for further proceedings in accordance with out Opinion and the law. Costs to be divided equally.
[1] Appellees have settled their claims against this policy of insurance.