**KOVACH et al.**

v.

**TRAN et al.**

2009-Ohio-7197.]

Court of Common Pleas of Ohio,
Medina County.

No. 08CIV1048.

Decided Feb. 13, 2009.

John N. Porter, for plaintiffs.

Cortney R. Oren, for defendant Halcyn Insurance Company.

JAMES L. KIMBLER, Judge.

{¶ 1} Julie and Kenneth Kovach filed a complaint for personal injuries arising out of an automobile accident that took place on October 3, 2003. On October 16, 2006, they filed an amended complaint and named Progressive Insurance as a party defendant. The claim against Progressive Insurance was based on a contract of insurance that contained an uninsured/underinsured motorist provision. The amended complaint added Progressive Insurance as a party defendant; the original complaint had not included a claim for breach of contract under the Kovachs' insurance contract.

{¶ 2} The original complaint was voluntarily dismissed by the plaintiffs, and the complaint under the present case number was filed on June 3, 2008, within the one-year period allowed by the savings statute. After the complaint was filed, Halcyon Insurance filed a motion to amend the pleadings to reflect that it, not Progressive Insurance, was the insurance company that issued the insurance policy to the Kovachs.

{¶ 3} Halcyon Insurance filed a motion for summary judgment. The motion alleges that the insurance contract between it and the Kovachs requires that any lawsuit seeking to recover damages under the policy's uninsured/underinsured motorist provision must be filed within three years of the date of the accident.

## Findings of Fact

{¶ 4} There is little disagreement on the facts in this matter. The Kovachs do not dispute that the amended complaint filed in the original action was filed more than three years after the date of the accident. They offer the argument, however, that the three years they had to bring an underinsured motorist claim does not begin to run until there is a determination whether the tortfeasor's insurance policy contains insufficient policy limits to compensate for the policyholder's injuries.

## Conclusions of Law

{¶ 5} Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 6} The standard for a motion for summary judgment was set forth in *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448–449, 663 N.E.2d 639, as follows: Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing that evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 628 N.E.2d 1377, citing *Temple* at 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 7} Applying the above to this case requires the court to review the statutory construction of R.C. 3937.18 as it existed prior to October 2001 and in its present version.

### Construction of R.C. 3937.18 Prior to October 2001

{¶ 8} In *Stanton v. Nationwide Mut. Ins. Co.* (1993), 68 Ohio St.3d 111, 112, 623 N.E.2d 1197, the following appears:

{¶ 9} "The General Assembly determined by enacting R.C. 3937.18 that automobile liability carriers must offer uninsured motorist coverage to their customers. *Watson v. Grange Mut. Cas. Co.* (1988), 40 Ohio St.3d 195, 532 N.E.2d 758. This court has described the purpose behind R.C. 3937.18 in various ways over the years, all of which may be summarized by stating that the uninsured motorist statute is meant to ensure that innocent persons who are injured by negligent uninsured motorists are not left without compensation simply because the tortfeasor lacked liability coverage. *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309. The statute protects persons who purchase insurance by providing a remedy to them in the event they are injured by uninsured motorists who cannot pay for the damages they cause. By allowing victims of automobile accidents to seek compensation from their own insurance carriers, the statute attempts to place those victims in the same position they would have been had the tortfeasors possessed liability coverage. *Bartlett v. Nationwide Mut. Ins. Co.* (1973), 33 Ohio St.2d 50, 62 O.O.2d 406, 294 N.E.2d 665. In short, the statute is remedial in nature, and is meant to provide a means of compensation to those injured by uninsured motorists."

{¶ 10} Because R.C. 3937.18 was remedial in nature, any ambiguity in the statute was to be construed in such a way as to effectuate the remedy. *Moore v. State Auto. Mut. Ins. Co.,* (2000), 88 Ohio St.3d 27, 723 N.E.2d 97. Thus ambiguities in the statute, and in insurance policies drafted pursuant to R.C. 3937.18, were construed to find that coverage existed. *Moore.*

{¶ 11} All that changed, however, in September 2001. At that time, the Ohio General Assembly enacted amendments to R.C. 3937.18, which were contained in Am.Sub.S.B. No. 97, 149 Ohio Laws, Part I, 779 ("Senate Bill 97"). Senate Bill 97 was enacted and became law on October 31, 2001.

### Construction of R.C. 3937.18 after October 31, 2001

{¶ 12} The version of R.C. 3937.18 that was enacted in October 2001 was radically different from the version that existed prior to that date. No longer were insurance companies compelled to offer uninsured/underinsured motorist protection. Insurance companies were given the power to decide whether they wanted to offer such coverage or not.

{¶ 13} This is shown by the language contained in R.C. 3937.18(I) that states the following:

{¶ 14} "Any policy of insurance that includes uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under specified circumstances, *including but not limited to any of* the following circumstances * * *."

{¶ 15} The effect of the above language was to change R.C 3937.18 from a remedial statute to a nonremedial statute. The effect of making R.C. 3937.18 into a nonremedial statute was that ambiguities no longer had to be resolved in favor of extending coverage to insurance policyholders who were injured by the negligent acts of drivers who didn't have insurance or didn't have enough insurance.

{¶ 16} Such a change also meant that the power of the judiciary to change the terms of a written contract of insurance on the grounds that certain terms were "ambiguous" was drastically limited. Decisions construing uninsured/underinsured motorist provisions that extended coverage did so on the grounds that an ambiguity was being clarified. See, e.g., *Moore,* 88 Ohio St.3d 27, 723 N.E.2d 97. Once, however, R.C. 3937.18 was amended so as to be nonremedial in nature, courts no longer had the power to make such rulings.

{¶ 17} Consequently, the nature of the decisions construing uninsured/underinsured motorist provisions began to change. Now the emphasis was on honoring the exact language of the contract.

{¶ 18} This trend is seen in the case of *Saunders v. Mortensen,* 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9, which reads:

{¶ 19} "The construction of a written contract is a matter of law that we review de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. Our primary role is to ascertain and give

effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898. We presume that the intent of the parties to a contract is within the language used in the written instrument. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. If we are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920."

{¶ 20} Later, in the same opinion, Justice Lundberg Stratton writes the following at ¶ 16–19: "We have long held that a contract is to be read as a whole and the intent of each part gathered from a consideration of the whole. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519. If it is reasonable to do so, we must give effect to each provision of the contract. *Expanded Metal Fire–Proofing Co. v. Noel Constr. Co.* (1913), 87 Ohio St. 428, 434, 101 N.E. 348. With these principles in mind, and reading the provision in its entirety and giving effect to all parts, we agree with Nationwide that Endorsement 2352 clearly and unambiguously limits all claims derived from one person's bodily injury to the single per-person limit of the policy. The plain language of the provision states that the 'bodily injury limit shown for any one person' (i.e., the single limit of $ 100,000) 'is for all legal damages.' 'All legal damages' is further described to include 'all derivative claims, claimed by anyone,' that arise out of the bodily injury to 'one person' as a result of 'one occurrence.'

{¶ 21} "The first paragraph is supported by the plain language of the second paragraph, which unambiguously provides, 'The per-person limit is the total amount available when one person sustains bodily injury * * *. No separate limits are available to anyone for derivative claims * * *.' Thus, reading the provision as a whole, we are able to determine that the intent of the parties in Endorsement 2352 is to limit all claims arising out of one person's bodily injury to the single, per-person limit of the policy.

{¶ 22} "We agree with the [court in *Carroll v. Allstate,* 148 Ohio App.3d 413, 2002-Ohio-3074, 773 N.E.2d 1061,] that this language is not susceptible of more than one interpretation. Endorsement 2352 clearly and unambiguously consolidates all claims arising out of any one person's bodily injury into a single claim in conformity with former R.C. 3937.18(H). Consequently, our inquiry need go no further. We lack authority to interpret a contract that is unambiguous. *Foster Wheeler.*"

### Discussion

{¶ 23} Applying the above principles to the present case, this court finds that the provision of the contract that contains the three-year limitation in which

to bring a lawsuit against Halcyon for uninsured or underinsured benefits is clear and unambiguous. The paragraph that contains the limitation reads as follows:

{¶ 24} "If no agreement is reached, any lawsuit against **us** for benefits under this Part III must be commenced within three (3) years after the date the **accident** occurred * * *."

{¶ 25} The language quoted above imposes a clear and unambiguous duty to bring the lawsuit for uninsured or underinsured motorist claims within three years of the accident. Since insurance companies are free to set forth a time limit in an insurance policy that is less than the statute of limitations set forth for written contracts in the Ohio Revised Code, this limitation is legal. See, e.g., *Angel v. Reed* (2008), 119 Ohio St.3d 73, 2008-Ohio-3193, 891 N.E.2d 1179, at ¶ 12.

{¶ 26} The only qualification is that the language containing the time limit must be clear and unambiguous. See, e.g., *Sarmiento v. Grange Mut. Cas. Co.*, 106 Ohio St.3d 403, 2005-Ohio-5410, 835 N.E.2d 692, at ¶ 11, citing *Colvin v. Globe Am. Cas. Co.* (1982), 69 Ohio St.2d 293, 296, 23 O.O.3d 281, 432 N.E.2d 167.

{¶ 27} In *Angel*, Chief Justice Moyer, writing for the court, rejected the appellant's argument that the appellant could not sue the insurance company within the time limit of the contract because she could not get service on the original tortfeasor. Since she could not get service on the original tortfeasor, she did not know until she had served the tortfeasor that the tortfeasor did not have insurance. The court rejected that argument.

{¶ 28} The argument in *Angel* is very similar to the argument being made by the Kovachs in this case. In this case, the Kovachs are arguing that they did not have to bring the lawsuit within three years of the accident date because, until they either settle with the tortfeasor or obtain a verdict, they do not know whether the tortfeasor is underinsured.

{¶ 29} While this court has some sympathy with this position, it finds that the *Angel* decision precludes this court from construing the contract in such a manner. Further, this court believes that construing the contract the way the Kovachs want would lead to more uncertainty in the area of underinsured motorist law. The court would, in essence, be placing an ambiguity in a contract provision where one does not now exist.

{¶ 30} Therefore, Halcyon's motion for summary judgment is granted and Halcyon is awarded judgment on the complaint filed by Kenneth and Julie Kovach.

So ordered.