50

BARTLETT, APPELLEE, *v.* NATIONWIDE MUTUAL INS. CO., APPELLANT.

(No. 72-390—Decided March 28, 1973.)

*Mr. Robert H. Farber, Jr.,* and *Mr. Josiah H. Black-more, II,* for appellee.

*Messrs. Crabbe, Brown, Jones, Potts & Schmidt, Mr. William H. Allyn, Jr.,* and *Mr. Wilbur W. Jones,* for appellant.

HERBERT, J. The question presented by this appeal is whether the coverage afforded by the policy issued by appellant to appellee met the requirements of R. C. 3937.18.

R. C. 3937.18 provides:

"No automobile * * * policy of insurance * * * shall be * * * issued * * * unless coverage is provided therein * * * in limits for bodily injury or death set forth in Section 4509.20 of the Revised Code, under provisions approved by the Superintendent of Insurance, for the protection of * * * [victims of uninsured motorists]."

Section 4509.20, as in effect at the time of the collision, read:

"(A) A policy * * * does not comply with * * * [Financial Responsibility Act coverage requirements] unless * * * such policy * * * is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interests and costs, of not less than ten thousand dollars * * * ."

The basic purpose of R. C. 3937.18 is clear. It "is designed to protect persons injured in automobile accidents from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." *Abate* v. *Pioneer Mutual Cas. Co.* (1970), 22 Ohio St. 2d 161, 165, 258 N. E. 2d 429; *Curran* v. *State Automobile Mutl. Ins. Co.* (1971), 25 Ohio St. 2d 33, 266 N. E. 2d 566; see, also, Note 1, 20 Cleve. L. Rev. 10 (1971). In other words, the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance.

If the motorist who injured appellee had been insured, the size of appellee's recovery would not have been reduced by the amount of any workmen's compensation benefits received by the appellee. *Pryor* v. *Webber* (1970), 23 Ohio St. 2d 104, 263 N. E. 2d 235. Thus, the Court of Appeals found:

"The provision of the policy providing for reduction in the amount payable under the uninsured motor vehicle coverage because of receipt of workmen's compensation benefits affords to the insured a lesser amount of damages under the coverage than he would be legally entitled to recover from the operator of the uninsured motor vehicle * * * ."

The Court of Appeals also correctly concluded that "R. C. 3937.18 requires coverage affording to the insured payment thereunder in an amount equal to the amount of damages he would legally be entitled to recover from the owner or operator of an uninsured motor vehicle within limits as set forth in R. C. 4509.20. Accordingly, the policy

provision for reduction of the workmen's compensation benefits received is invalid because it does not provide the coverage required by R. C. 3937.18.''

Although there is no Ohio authority directly in point, other jurisdictions have reached the same result. *Sullivan* v. *Doe* (Mont. 1972), 495 P. 2d 193; *Williams* v. *Buckelew* (La. 1971), 246 So. 2d 58; *Booth* v. *Seaboard Fire & Marine Ins. Co.* (1970), 431 F. 2d 212; *Aldcroft* v. *Fidelity & Cas. Co.* (1969), 106 R. I. 311, 259 A. 2d 408; *Carter* v. *St. Paul Fire and Marine Ins. Co.* (1968), 283 F. Supp. 384; *Standard Accident Ins. Co.* v. *Gavin* (1966), 184 So. 2d 229; *Peterson* v. *State Farm Mutual Auto Ins. Co.* (1964), 238 Ore. 106, 393 P. 2d 651.

We are aware of the contrary authorities.[1] In some instances the controlling laws are either different from our Ohio statutes or a different construction has been placed upon them. But, as the Florida court stated in *Standard Accident Insurance Co.* v. *Gavin, supra,* at page 231: ''This court is not bound to follow the decisions of a court of \* \* \* [any] foreign jurisdiction when on established principles to which this court \* \* \* subscribe[s], it is unable to agree with the result of the decision of the foreign jurisdiction.''

As suggested by *Abate* and *Curran, supra,* R. C. 3937.-18, *ab initio,* enunciated a public policy in this state. Private parties are without power to insert enforceable provisions in their contracts of insurance which would restrict coverage in a manner contrary to the intent of the statute.[2]

---

[1] *Safeco Ins. Co.* v. *Houchins* (1970), 12 Cal. App. 3d 12; *Ullman* v. *Wolverine Ins. Co.* (1970), 48 Ill. 2d 1, 269 N. E. 2d 295; *Michigan Mutual Liability Co.* v. *Mesner* (1966), 2 Mich. App. 350, 139 N. W. 2d 913; *Hackman* v. *American Mutual Liability Ins. Co.* (1970), 110 N. H. 87, 261 A. 2d 433; *Durant* v. *Motor Vehicle Accident Indemnification Corp.* (1965), 15 N. Y. 2d 408, 207 N. E. 2d 600.

[2] In this regard, it is of small consequence that an insurer first obtains the approval of the State Insurance Commissioner, since the Commissioner does not have authority to approve policies or policy language at variance with R. C. 3937.18. See *Peterson* v. *State Farm Mutual Auto Ins. Co., supra; Sullivan* v. *Doe, supra.*

On October 1, 1970, R. C. 3937.18 was amended to additionally provide:

"(D) The coverage required by this section shall not be made subject to an exclusion or reduction in amount because of any workmen's compensation benefits payable as a result of the same injury or death."

Although both parties concede that the amendment has no direct application in the instant case, appellant argues that since the General Assembly specifically prohibited the setoff of workmen's compensation benefits by the 1970 amendment, the converse must have been true prior thereto. While we agree that every amendment to a statute is made to effect some purpose, *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 175, 283 N. E. 2d 434, it is equally well established that "[t]hat purpose may be either to add new provisions and conditions to the section as it then stands, *or for the purpose of making plain the meaning and intent thereof.*" (Emphasis added.) *Lytle* v. *Baldinger* (1911), 84 Ohio St. 1, 8, 95 N. E. 389.

In our opinion, the October 1, 1970, amendment to R. C. 3937.18, adding subparagraph (D), represents a legislative intention to clarify, rather than alter, existing law. In this connection, we note that *Abate, supra,* was decided prior to the amendment and that the General Assembly is presumed to have been aware of that decision when the amendment was enacted.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CORRIGAN, STERN and CELEBREZZE, JJ., concur.

W. BROWN, J., dissents.

P. BROWN, J., not participating.

WILLIAM B. BROWN, J., dissenting. I dissent from the syllabus and from the judgment.

The case is essentially concerned with the construction

of R. C. 3937.18, as it read in 1966 when the injuries involved here were sustained. The statute is written in specific and unambiguous terms. It provides:

"No automobile * * * policy of insurance * * * shall be * * * issued * * * unless coverage is provided therein * * * in limits for bodily injury or death set forth in Section 4509.20 of the Revised Code, under provisions approved by the Superintendent of Insurance, for the protection of * * * [victims of uninsured motorists]."

Section 4509.20, as in effect at the time of the collision, read:

"(A) A policy * * * does not comply with * * * [Financial Responsibility Act coverage requirements] unless * * * such policy * * * is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interests and costs, of not less than ten thousand dollars * * *."
Furthermore the policy issued by the appellant to the appellee provided the coverage and the protection herein contained in R. C. 4509.20.

This court has spoken definitively about provisions of statutes that are clear:

"It has been so frequently stated as to become axiomatic that the meaning and intent of a legislative enactment are to be determined primarily from the language itself. The plain provisions of a statute must control. If there is no ambiguity therein there is no occasion to construe or interpret. To construe or interpret what is already plain is not interpretation but legislation, which is not the function of courts." *Iddings* v. *Board of Education of Jefferson County School District* (1951), 155 Ohio St. 287, 290.

In the instant case the language is clear, as can be seen from a reading of the statute: There is no prohibition of setoff clauses. In such an instance there is no justification for reaching out to construe or interpret the statute.

Further support that the setoff provision of the policy was not prohibited is provided by the 1970 amendment of R. C. 3937.18. To the original statute was added para-

graph (D), which, in specific language forbade setoff provisions.[3]

There has long been a presumption in Ohio that there must be a reason for a legislative amendment to a statute. This was established in *Lytle* v. *Baldinger* (1911), 84 Ohio St. 1, 8, wherein the court stated:

"The presumption is, that every amendment to a statute is made to effect some purpose. That purpose may be either to add new provisions and conditions to the section as it then stands, or for the purpose of making plain the meaning and intent thereof." In this case, it has been established that the original statute was clear and unambiguous; the amendment, therefore, did add a new provision. The statute in its original draft was clear. The intent was to provide protection for people injured by the owner or operator of an uninsured vehicle; the amount of protection was regulated by the Financial Responsibility Act. There was no ambiguity regarding setoff provisions that needed clarification; such provisions did not conflict with the statute as long as the policy guaranteed recovery above the minimum set by the Financial Responsibility Act. The amendment therefore changed the law and prohibited such setoff contracts; whereas, before, the law had not prohibited such setoffs.

The majority decision impinges on the freedom to contract. This court has cautioned against overextending the public policy argument to invalidate contracts:

"Agreements voluntarily and fairly made between competent persons are usually valid and enforceable, and the principle that agreements opposed to public policy are not enforceable should be applied cautiously and only in circumstances patently within the reasons on which that doctrine rests." *Gugle* v. *Loeser* (1944), 143 Ohio St. 362, paragraph one of the syllabus.

"In Ohio, the courts have held that an insurance policy

---

[3] "(D) The coverage required by this section shall not be made subject to an exclusion or reduction in amount because of any workmen's compensation benefits payable as a result of the same injury or death."

is to be treated as a voluntary contract which is subject to the public policy of the state." *L'Orange* v. *Medical Protective Co.* (C. A. 6, 1968), 394 F. 2d 57, 59.

Therefore, since the contract at hand is a voluntary one, it should be voided only "on circumstances patently within the reasons on which that doctrine rests." The set-off provision in the contract does not patently injure the public nor patently violate any statute. This provision does not prevent a recovery on the policy for injuries suffered from an uninsured motorist nor does it set the amount of compensation the injured shall receive below the minimum limit established by law.