WOLVERTON ET AL., APPELLANTS, *v.* VIGILANT INSURANCE COMPANY, APPELLEE.

(No. 76AP-272—Decided September 30, 1976.)

*Messrs. Volkema, Pees & Snevel,* for appellants.
*Messrs. Lane, Alton & Horst* and *Mr. David L. Day,* for appellee.

McCormac, J. Plaintiffs filed suit against Vigilant Insurance Company claiming that they were entitled to damages from an uninsured motorists' clause contained in a

policy covering the vehicle in which they were riding. Defendant, the appellee herein, answered admitting that the automobile was insured by it and also set forth a denial and affirmative defenses.

Defendant moved the court for a summary judgment pursuant to Civ. R. 56 and for an order determining and declaring (1) that the maximum amount of coverage provided under the uninsured motorists' provisions of defendant's policy is $5,000 and (2) that defendant is entitled to a credit against such $5,000 coverage for payments made under the expenses for medical services provisions of its policy.

The parties agreed that there was no genuine issue as to any material fact and submitted a stipulation of facts as follows:

"(1) Kenneth A. Willison, was operating a 1973 Ford Pinto in a northerly direction on U. S. Route 66 in Sangamon County, Illinois. Said highway is a four-lane divided highway. The titled owner of said Ford Pinto was Graham Leasing Corporation of Columbus, Ohio, and said vehicle was leased to said Kenneth A. Willison. Said vehicle was registered in the State of Ohio. Jeffrey B. Wolverton, Frances W. Willison and Paige A. Wolverton were riding in said vehicle. All said persons were residents of 1820 Guilford Road, Columbus, Ohio. The trip during which said collision occurred originated in Columbus, Ohio. The destination was in Michigan. The trip was to finally terminate back in Columbus, Ohio.

"(2) Larry L. Baker, was operating a 1970 Gremlin in a southerly direction on said U. S. Route 66. At the intersection of U. S. Route 66 with County Road No. 10N, said Larry L. Baker made a left turn and drove said 1970 Gremlin into the path of said 1973 Pinto. Said vehicles then collided. Larry L. Baker was a resident of Lincoln, Illinois. All persons riding in the 1973 Ford Pinto suffered bodily injuries.

"(3) Dairyland Insurance Company had in full force and effect a policy of automobile liability insurance, Policy No. 11-0133497, which provided liability coverage for said 1970 Gremlin and said Larry L. Baker. Said policy pro-

vided coverage for bodily. injury in the amount of $10,000 for one person and $20,000 per accident. A copy of the facsimile of said policy, consisting of ten pages, is attached hereto marked 'Exhibit A' and incorporated herein.

"(4) Vigilant Insurance Company had in full force and effect a policy of automobile liability insurance, Policy No. AU 1516 03 42, which provided coverage for said 1973 Ford Pinto. Kenneth A. Willison and Frances W. Willison are the named insureds in said policy. A copy of said policy, consisting of eleven pages, is attached hereto marked 'Exhibit B' and incorporated herein.

"(5) Within a year after said collision, Jeffrey B. Wolverton, Paige A. Wolverton, Frances W. Willison and Kenneth A. Willison commenced an action against said Larry L. Baker, being Case No. S-CIV-74-3, in the United States District Court for the Southern District of Illinois. That case was settled and dismissed with prejudice on November 5, 1974.

"(6) In accordance with the terms of said settlement and pursuant to its obligations under its contract with Larry L. Baker, Dairyland Insurance Company paid the total amount of $19,000 to Jeffrey B. Wolverton, Paige A. Wolverton, Frances W. Willison and Kenneth A. Willison under the bodily injury provisions of said policy and $1,000 for damages to personal property under the property damage provision of said policy in exchange for a covenant not to sue. A copy of said covenant, consisting of two pages, is attached hereto marked 'Exhibit C' and incorporated herein. The amount of $9,000 was paid on the claim of Jeffrey B. Wolverton. The amount of $750 was paid on the claim of Paige A. Wolverton. The amount of $8,500 was paid on the claim of Frances W. Willison. The amount of $750 was paid on the claim of Kenneth A. Willison.

"(7) Dairyland Insurance Company also paid or reserved the amount of $1,000 under the bodily injury provisions of its policy for payment on the bodily injury claims of six persons who were riding in the 1970 Gremlin driven by Larry L. Baker.

"(8) Subsequent to the accident, Vigilant Insurance Company has made payments to or on behalf of the occu-

pants of the 1973 Ford Pinto under the medical payments provisions of its policy as follows:

"$2,000 for medical expenses of Jeffrey B. Wolverton; $143.74 for medical expenses of Paige A. Wolverton; $287.86 for medical expenses of Frances W. Willison; and $161.59 for medical expenses of Kenneth A. Willison."

The trial court sustained the defendant's motion for a summary judgment and entered the following order:

"It is therefore ordered, adjudged and decreed

"1. That the maximum amount of coverage available to plaintiffs under the uninsured provisions of defendant's policy is $2,500.00 for one person with a total of $5,000.00 for the accident out of which plaintiffs' claims arose.

"2. That defendant is entitled to a credit in the amount of $2,593.19 against such $5,000.00 total coverage for payments made by defendant under the expenses for medical services provisions of its policy.

"It is further ordered, adjudged and decreed that, since defendant's policy requires arbitration of the right of plaintiffs to recover and, if so, the amount, this action be and the same hereby is dismissed without prejudice at plaintiffs' costs."

From the judgment of the trial court, plaintiffs have filed a timely notice of appeal setting forth the following assignments of error:

"1. The trial court erred in sustaining defendant's motion to dismiss plaintiffs' complaint on the grounds that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law as shown by the pleadings and the stipulation of facts.

"2. The trial court erred in sustaining defendant's motion for an order determining and declaring that the maximum amount of coverage provided under the uninsured motorists provisions of defendant's policy is $5,000.00.

"3. The trial court erred in sustaining defendant's motion for an order determining and declaring that defendant is entitled to a credit against such $5,000.00 coverage for the payments made under the expenses for medical services provisions of its policy."

The first issue in this case is whether Baker's automo-

bile was an "uninsured" automobile so that plaintiffs are able to collect under the uninsured motorists' coverage provided in defendant's policy. Actually, by Ohio standards, Baker was not uninsured but was under-insured, as the Dairyland Insurance Company policy provided coverage less than the minimum specified in Ohio, such coverage being $10,000 per person and $20,000 per accident for bodily injury, in contrast with the minimum required by R. C. 4509.-20 for an automobile insured in Ohio—$12,500 per person, and $25,000 per accident.

Plaintiffs' contention is that the accident was caused by an uninsured motorist; hence, they are entitled to the uninsured motorists' coverage, and, in addition, are entitled to recover from Baker's insurance policy to the extent of that coverage. Defendant contends that its uninsured motorists' coverage only applies to the extent that Baker was under-insured; i. e., $2,500 per person and $5,000 total.

R. C. 3937.18 provides, in pertinent part, as follows:

"(A) * * * The named insured * * * may require the issuance of coverage for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent, that shall be no less than the limits set forth in Section 4509.20 of the Revised Code for bodily injury or death. * * *

"(B) For the purpose of this Section, a motor vehicle is uninsured if the liability insurer denies coverage or is or becomes the subject of insolvency proceedings in any jurisdiction."

The question is whether the liability insurer, Vigilant Insurance Company, has denied coverage as defined by R. C. 3937.18(B), when the coverage applicable is less than the statutory limits required by R. C. 3937.18 and 4509.20. In our view, there is a denial of coverage under these circumstances as the coverage to which reference is made in R. C. 3937.18(B) is coverage in the minimum statutory amount required in Ohio. This was the position taken in California in *Taylor* v. *Preferred Risk Mutual Ins. Co.* (1964), 225 Cal. App. 2d 80, 37 Cal. Rptr. 63, where an uninsured motor vehicle was described as one upon which there is no bodily injury or liability insurance applicable

at the time of the accident. The court found a Texas automobile insured for $5,000 per person as uninsured since California financial responsibility laws require coverage of a minimum of $10,000. The court, however, indicated that there was to be no double recovery in that the California insurance company providing coverage under the uninsured motorists' provision was entitled to subrogation against the Texas insurance company.

There is no provision in the statutes for finding that a tortfeasor is partially uninsured and invoking a pro rata coverage, as applied by the trial court. Actually, since subrogation applies, in many instances the net result will be the same. However, when there are multiple claimants to an under-insured policy, the result may be substantially different as subrogation rights may be of substantially less value than the amount subrogated. In any event, under Ohio law, an under-insured motor vehicle is regarded as an uninsured motor vehicle for purposes of invoking the uninsured motorists' coverage. The Ohio Supreme Court has held in *Shelby Mutual Ins. Co.* v. *Smith* (1969), 45 Ohio St. 2d 66 as follows:

"The term 'uninsured motor vehicle,' as used in R. C. 3937.18, does not include those motor vehicles for which the applicable liability insurance coverage carried by the tortfeasor owner or operator meets or exceeds the limits set by R. C. 4509.20." (Syllabus.)

Inferentially, if the liability insurance coverage is less than the statutory minimum, the vehicle is an uninsured motor vehicle.

The second assignment of error is sustained. We hold that the uninsured motorists' coverage of Vigilant Insurance Company is applicable in full to plaintiffs to the limits of $12,500 per person, and $25,000 total per accident subject, of course, to the subrogation rights of Vigilant Insurance Company against the tortfeasor and Dairyland Insurance Company.

Plaintiffs contend in the first assignment of error that where an automobile liability insurance policy contains a limit of coverage for one person and a limit of coverage per accident which is twice the amount of the one person

limit, and there are more than two persons injured in an accident having claims in total value exceeding the per accident liability policy limit, the injured parties have an uninsured injury. That argument was recently rejected by the Ohio Supreme Court in upholding the denial of payment under an uninsured motorists' policy, where the plaintiff made no recovery under a tortfeasor's liability policy because of the number of injured persons. See *Shelby Mutl. Ins. Co.* v. *Smith, supra.* Assignment of error No. 1 is overruled.

The third assignment of error is that the trial court erred in permitting defendant to be given a credit against uninsured motorists' coverage for medical payments made under another provision of its policy.

Analyzing the policy, we find that there is no subrogation clause for medical payments made under the policy as against the tortfeasor. However, there is a provision that a payment for uninsured motorists' coverage is to be reduced by amounts paid for medical services. The question is whether this provision giving appellee credit against uninsured motorists payments for payments made under the medical payment provisions is to be given effect.

This court has very recently decided that question. See *Toney* v. *Buckeye Union Ins. Co.,* unreported, Franklin County Court of Appeals No. 76AP-252, rendered August 31, 1976.

In *Toney,* we held:

"The Ohio Supreme Court has established the law of Ohio in regard to insurance contract provisions purporting to reduce the amount of recovery under uninsured motorists' coverage as follows:

" 'As of September 15, 1965, R. C. 3937.18 established that all persons contracting for uninsured motorists' protection are entitled to recover from their insurer, within the applicable limits of the contract of insurance, all damages which would have been otherwise entitled to recover from an uninsured motorist, and insurance contract provisions entered into on or after that date which purport to reduce the amount of said recovery are unenforceable as against public policy.' *Bartlett* v. *Nationwide Mutl. Ins. Co.* (1973), 33 Ohio St. 2d 50 (Syllabus).

"Justice Herbert in *Bartlett* stated that the legislative purpose in creating compulsory uninsured motorists' coverage is to place the injured policyholder in the same position with regard to the recovery of damages that he would have been in if the defendant had possessed liability insurance.

"The policy executed between the parties herein contains no provision for subrogation of medical payments against a third-party tortfeasor. Thus, the situation is that the contract permits credit to the insurance company for medical payments if the third-party tortfeasor is uninsured, but permits no such credit by way of subrogation if the third party is insured. Therefore, had the third-party tortfeasor been insured, appellee would be entitled to collect all damages from the third-party tortfeasor, including the medical payments of $2,000 provided by Buckeye Union Insurance Company, without affecting the medical payment coverage. Hence, the contractual provision of the policy reducing the amount of recovery under uninsured motorist coverage is in conflict with the law announced in the syllabus of *Bartlett* and is unenforceable.

"Appellant makes the very valid argument that the provision in question is designed to prevent double recovery and is thus based on sound public policy. That argument would be well taken if the policy also provided for subrogation against an insured third-party tortfeasor for medical payments made to the insured, a provision held to be in accord with public policy and legal. See, *Smith* v. *Travelers Ins. Co.*, 76AP-247, released August 10, 1976."

Hence, the provision of the policy giving credit to the insurer for medical payments as against uninsured motorists' coverage is invalid and not to be given effect.

Assignment of error No. 3 is sustained.

Assignments of error 2 and 3 are sustained and assignment of error 1 is overruled.

The judgment of the trial court is reversed. The case is remanded to the trial court for further proceedings consistent with this decision.

*Judgment reversed.*

STRAUSBAUGH, P. J., and WHITESIDE, J., concur.