FAZIO; MACNEALY, APPELLEE, *v.* HAMILTON MUTUAL INSURANCE COMPANY ET AL.; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLANT.

[Cite as *Fazio v. Hamilton Mut. Ins. Co.*, 106 Ohio St.3d 327, 2005-Ohio-5126.]

(No. 2004–1559—Submitted April 27, 2005—Decided October 12, 2005.)

MOYER, C.J.

{¶ 1} This appeal presents two legal issues certified to us by the Court of Appeals for the Fifth District: (1) Did the version of R.C. 3937.18 enacted by Sub.S.B. No. 267, 148 Ohio Laws, Part V, 11380, prohibit insurers from limiting the geographic scope of uninsured-motorist coverage and (2) if insurers were permitted to limit the geographic scope of uninsured-motorist coverage, does the limitation provision in State Farm's policy restrict the geographic scope of uninsured-motorist coverage to the United States and Canada? We answer the first question in the negative and the second question in the affirmative.

{¶ 2} In May 2001, plaintiff-appellee, Paula MacNealy, was struck by a dune buggy while walking on a beach in Mexico. MacNealy filed a claim for uninsured-motorist coverage under her own automobile insurance policy, which had been issued by defendant-appellant, State Farm Mutual Automobile Insurance Company. State Farm denied the claim, citing the following provision in MacNealy's policy:

{¶ 3} "**Where Coverage Applies**

{¶ 4} "The coverages **you** chose apply:

{¶ 5} "1. in the United States of America, its territories and possessions or Canada; or

{¶ 6} "2. while the insured vehicle is being shipped between their ports.

{¶ 7} "The liability, medical payments and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage **loss** in Mexico is determined on the basis of cost at the nearest United States point.

{¶ 8} "Death, dismemberment and loss of sight, total disability and loss of earnings coverages apply anywhere in the world." (Emphasis sic.)

{¶ 9} State Farm argues that MacNealy is not entitled to uninsured-motorist coverage, because the accident in question took place in Mexico.

{¶ 10} MacNealy filed a complaint against State Farm in the Common Pleas Court of Licking County, and both parties moved for summary judgment. The court granted summary judgment in favor of MacNealy after finding that the geographic-limitation provision relied upon by State Farm was invalid and unenforceable.

{¶ 11} The Court of Appeals for the Fifth District affirmed the judgment of the trial court, holding that the geographic limitation in the State Farm policy did not apply to the uninsured-motorist coverage available under the policy, and even assuming that the limitation did apply, it was unenforceable because it violated former R.C. 3937.18 and the policy underlying it. The court of appeals determined that its judgment conflicted with the decisions of the Sixth District Court of Appeals in *Caba v. State Farm Auto. Ins. Co.* (Mar. 31, 1995), Lucas App. No. L–94–168, 1995 WL 136470, the Eighth District Court of Appeals in *Tscherne v. Nationwide Mut. Ins. Co.*, 8th Dist. No. 81620, 2003-Ohio-6158, 2003 WL 22724630, and the Tenth District Court of Appeals in *Prudential Property Cas. Ins. Co. v. Gales* (Aug. 7, 1986), Franklin App. No. 86AP–250, 1986 WL 8675. The court of appeals certified the following issues for our review:

{¶ 12} "(1) May an insurer limit the geographic scope of uninsured motorist coverage, or does such a limitation violate R.C. 3937.18?

{¶ 13} "(2) If an insurer may limit the geographic scope of uninsured motorist coverage, what is the geographic scope of the uninsured motorist coverage arising under the State Farm policy?"

{¶ 14} This cause is now before this court upon our determination that a conflict exists.

## Validity of Geographic–Limitation Provisions

{¶ 15} The validity of a limitation on the geographic scope of uninsured-motorist coverage depends upon whether the limitation comports with the requirements of R.C. 3937.18, the statute that governs uninsured-motorist coverage in Ohio. *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431,

433, 23 O.O.3d 385, 433 N.E.2d 555. The version of R.C. 3937.18[1] in effect at the time MacNealy entered into the contract for automobile liability insurance provided:

{¶ 16} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:

{¶ 17} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury, sickness, or disease, including death under provisions approved by the superintendent of insurance, for the protection of insureds thereunder who are legally entitled to recover from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy." Sub.S.B. No. 267, 148 Ohio Laws, Part V, 11380.

{¶ 18} Former R.C. 3937.18(A)(1) required insurance companies to offer uninsured-motorist coverage to all purchasers of automobile liability insurance policies in Ohio. Notably, the statute did not expressly require insurers to offer a minimum amount of geographic coverage, nor did it expressly prohibit insurers from limiting the geographic scope of the offered uninsured-motorist coverage.

{¶ 19} Notwithstanding the lack of express statutory support for her position, MacNealy contends that geographic limitations on uninsured-motorist coverage violate former R.C. 3937.18, and she cites *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309, in support of her argument.

{¶ 20} The validity of geographic limitations was not at issue in *Alexander.* In *Alexander,* we addressed the validity of a "household exclusion," an automobile-insurance-policy exclusion that barred an insured from receiving uninsured- and underinsured-motorist coverage when the tortfeasor who caused the accident was driving the insured's own vehicle. *Alexander,* 62 Ohio St.3d at 399, 583 N.E.2d 309.

{¶ 21} We held that the household exclusion was invalid because, by eliminating coverage for torts that occur in the insured's vehicle, the exclusion restricted coverage in a manner contrary to the intent of former R.C. 3937.18, which was to

---

1. MacNealy's automobile-insurance policy was issued on May 7, 2001, when the S.B. No. 267 version of R.C. 3937.18 was in effect. 148 Ohio Laws, Part V, 11380. The statute was subsequently amended by Senate Bill No. 97, effective October 31, 2001, 149 Ohio Laws, Part I, 779.

ensure that insured motorists who were injured by negligent, uninsured motorists were not left without compensation simply because the tortfeasor lacked liability coverage. Id. at 400, 583 N.E.2d 309. We held: "An automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from causes of action that are recognized by Ohio tort law." Id. at syllabus.

{¶ 22} Relying on the syllabus in *Alexander,* MacNealy argues that geographic limitations on uninsured-motorist coverage are unenforceable because they purport to deprive insureds of uninsured-motorist coverage for causes of action recognized by Ohio tort law.

{¶ 23} MacNealy's reliance on the syllabus in *Alexander* is misplaced. In contrast to the household exclusion at issue in *Alexander,* a geographic limitation does not *eliminate* or *reduce* mandatory uninsured-motorist coverage for any cause of action recognized under Ohio tort law. Rather, a geographic limitation *defines* where a legally negligent act by an uninsured motorist must occur in order to trigger uninsured-motorist coverage. In this respect, a geographic limitation is similar to other general provisions of an automobile insurance policy that define who is an insured under the policy, the length of time covered by the policy, and the monetary limits of the coverages available under the policy.

{¶ 24} This court has recognized that "the public policy of this state, as gleaned through the Acts of the General Assembly, is to ensure that all motorists maintain some form of liability coverage on motor vehicles operated within Ohio." *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 250, 725 N.E.2d 261. The Ohio Motor Vehicle Financial Responsibility Act, R.C. Chapter 4509, which was enacted to "provide sanctions which would encourage owners and operators of motor vehicles on Ohio highways to obtain liability insurance sufficient in amount to protect others who might be injured through the negligent operation of a motor vehicle," requires every driver to maintain one of the forms of financial responsibility specified by the statute. *Iszczukiewicz v. Universal Underwriters Ins. Co.* (N.D.Ohio 1960), 182 F.Supp. 733, 735. A motor-vehicle liability-insurance policy is one such form of financial responsibility. Former R.C. 3937.18 protected motorists who purchased motor-vehicle liability-insurance policies by requiring the insurer to offer them uninsured-motorist coverage in an amount equivalent to the liability coverage available under the policy.

{¶ 25} Former R.C. 4509.51(B)[2] set forth the requirements for motor-vehicle liability-insurance policies issued in Ohio and provided that every such policy was required to insure the policyholder against loss from liability for damages arising

---

2. The statute was subsequently amended in 2003 by H.B. No. 139, effective February 12, 2004.

out of the ownership, maintenance, or use of a motor vehicle within the United States or Canada. Am.H.B. No. 98, 133 Ohio Laws, Part II, 1851, 1854. Given that former R.C. 3937.18 attempted to place injured insureds in the same position they would have been had the tortfeasor been insured, *Bartlett v. Nationwide Mut. Ins. Co.* (1973), 33 Ohio St.2d 50, 62 O.O.2d 406, 294 N.E.2d 665, it is logical to construe former R.C. 3937.18 as requiring uninsured-motorist coverage in the same geographical area as R.C. 4509.51 required liability coverage. Thus, just as an insurer could limit the territorial scope of liability coverage to the United States and Canada, the insurer could similarly limit the territorial scope of uninsured-motorist coverage.

{¶ 26} We emphasize that there is no language in former R.C. 3937.18 that precluded insurers from limiting uninsured-motorist coverage in this way. "[V]irtually every state ·that has considered the issue of whether an insurer may territorially limit uninsured motorist coverage when state law is silent as to such limitation has upheld a territorial limitation." *Caba v. State Farm Auto. Ins. Co.* (Mar. 31, 1995), Lucas App. No. L–94–168, 1995 WL 136470, quoting *Smith v. Illinois Farmers Ins. Co.* (Minn.App.1990), 455 N.W.2d 499, 501.

{¶ 27} Moreover, to construe former R.C. 3937.18 as precluding insurers from imposing geographical limitations on uninsured-motorist coverage would lead to a situation in which automobile liability coverage would be required in the United States and Canada, while uninsured-motorist coverage under the same policy would be required throughout the world. Strong public-policy considerations can be asserted against requiring uninsured-motorist coverage for accidents occurring in all foreign countries, in many of which the risk that insureds would be struck by uninsured vehicles is either unknown or so high as to make coverage impractical. The increased scope of the risk, in addition to the increased difficulty and expense associated with investigating claims in those countries, would result in dramatic increases in the premiums for uninsured-motorist coverage. Furthermore, insured motorists who do not travel to foreign countries would be required to subsidize the additional cost of underwriting the risk of insureds who do.

{¶ 28} We hold that former R.C. 3937.18 did not prohibit insurers from limiting uninsured-motorist coverage to accidents occurring in the United States and Canada.

{¶ 29} Having concluded that former R.C. 3937.18 permitted insurers to confine uninsured-motorist coverage to within specified geographical boundaries, we now consider whether the geographic-limitation provision in the State Farm policy limits the scope of uninsured-motorist coverage available under that policy.

### Geographic Scope of Coverage under the State Farm Policy

{¶ 30} The State Farm policy sets forth geographic limitations for all coverages available under the policy in a general provision entitled "WHEN AND WHERE COVERAGE APPLIES." The policy provides:

{¶ 31} "**Where Coverage Applies**

{¶ 32} "The coverages **you** chose apply:

{¶ 33} "1. in the United States of America, its territories and possessions or Canada; or

{¶ 34} "2. while the insured vehicle is being shipped between their ports.

{¶ 35} "The liability, medical payments and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage **loss** in Mexico is determined on the basis of cost at the nearest United States point.

{¶ 36} "Death, dismemberment and loss of sight, total disability and loss of earnings coverages apply anywhere in the world." (Emphasis sic.)

{¶ 37} The policy imposes geographic limitations on "coverages **you** [defined in the policy as 'the named insured'] chose" and then sets forth limited exceptions for certain specified coverages. MacNealy argues that the limitations do not apply to the uninsured-motorist-coverage portion of her policy, because uninsured-motorist coverage is not a coverage an insured may *choose* to include in his or her policy. Pursuant to former R.C. 3937.18, she argues, uninsured-motorist coverage was mandatory and, therefore, was provided with every motor-vehicle liability policy issued in Ohio, whether the insured chose to include it or not.

{¶ 38} MacNealy misconstrues the statute. Former R.C. 3937.18 did not require insureds to purchase uninsured-motorist coverage; rather, the statute required insurers to *offer* uninsured-motorist coverage to their customers. Former R.C. 3937.18(A)(1); *Stanton v. Nationwide Mut. Ins. Co.* (1993), 68 Ohio St.3d 111, 113, 623 N.E.2d 1197. Once an insurer offered uninsured-motorist coverage, the statutory mandate was satisfied and the insured was permitted to accept or reject the coverage. Id. Here, State Farm satisfied former R.C. 3937.18(A)(1) by offering MacNealy uninsured-motorist coverage. She accepted the offer and, in doing so, *chose* to include the coverage in her policy.

{¶ 39} Therefore, the State Farm policy clearly and unambiguously provides uninsured-motorist coverage in the United States and Canada only. Pursuant to our resolution of the first certified question, State Farm was permitted to limit the geographic scope of uninsured-motorist coverage in this way.

{¶ 40} It is immaterial that liability coverage under the State Farm policy also applies in areas of Mexico and thus is geographically more extensive than uninsured-motorist coverage. Former R.C. 3937.18(A)(1) did not, as MacNealy

suggests, require insurers to offer uninsured-motorist coverage that was equivalent in all ways, including geographic scope, to the liability coverage available under the insurance policy. Rather, former R.C. 3937.18(A)(1) required only that insurers offer uninsured-motorist coverage "in an *amount of coverage equivalent* to the automobile liability or motor vehicle liability coverage." If the General Assembly had intended to require the two coverages to be identical, or even geographically coextensive, it would have made its intentions clear by expressly stating so in the statute. However, in codifying the mandatory-offering requirements for uninsured-motorist coverage, the General Assembly did not require insurers to offer uninsured-motorist coverage "identical" to liability coverage, nor did the General Assembly require insurers to offer uninsured-motorist coverage "equivalent in geographic scope" to liability coverage. Our duty is to enforce the statute as written, and thus, we hold that former R.C. 3937.18(A)(1) required insurers to offer uninsured-motorist coverage that was equivalent only in amount to liability coverage.

{¶ 41} State Farm satisfied former R.C. 3937.18(A)(1) by offering MacNealy uninsured-motorist coverage equivalent in amount to liability coverage. The declarations page of the State Farm policy reveals that the policy provided uninsured-motorist coverage and liability coverage in the same amount: $100,000 for each person and $300,000 for each accident.

{¶ 42} Accordingly, we hold that the State Farm policy clearly and unambiguously limits uninsured-motorist coverage to the United States and Canada and, therefore, MacNealy is not entitled to uninsured-motorist coverage for the accident that occurred in Mexico. The judgment of the court of appeals is reversed.

Judgment reversed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

RESNICK and PFEIFER, JJ., dissent and would dismiss the cause as having been improvidently accepted.

---

Clark, Perdue, Arnold & Scott and Glen R. Pritchard, for appellee.

Gallagher, Gams, Pryor, Tallan & Littrell, L.L.P., Mark H. Gams, and M. Jason Founds, for appellant.