GREEN

v.

**WESTFIELD INSURANCE COMPANY.**

2006-Ohio-7325.]

Court of Common Pleas of Ohio,
Medina County.

No. 05CIV1135.

Decided March 23, 2006.

Scott Wood, for plaintiff.

Mark Fischer and Cari Fasco, for defendant.

---

JAMES L. KIMBLER, Judge.

{¶ 1} On November 19, 2003, Janice Green filed a complaint against Westfield Insurance Companies setting forth three causes of action. The first was for breach of contract, the second was for bad faith, and the third was for a class action seeking a declaratory judgment that insurance policies written by Westfield violated R.C. 3937.18. Both parties have filed motions for summary judgment on the first cause of action. Because this court finds that Westfield did not breach its contract of insurance with Green, it enters summary judgment on the first two causes of action, thereby rendering the third cause of action moot.

### Factual Findings

{¶ 2} The following facts are not disputed by the parties:

{¶ 3} On May 28, 2003, Chester and Janice Green renewed Westfield policy No. WNP 7183695, which was an automobile liability policy. This policy had an uninsured/underinsured-motorist provision. That provision was contained in Section V.

{¶ 4} While this policy was in effect, Green was injured while a passenger in a car driven by her husband. His negligence caused an accident that resulted in the death of one person and injuries to Green. Green made a claim under the Westfield policy, arguing that at the time of the accident her husband was an uninsured motorist with respect to her injuries. Westfield denied coverage. It based its decision on two provisions in the policy.

{¶ 5} The first provision is found in Section V—Coverages and reads as follows:

{¶ 6} "An **uninsured motor vehicle** or an **underinsured motor vehicle** does not include any vehicle or equipment:

{¶ 7} "1. owned by or furnished or available for the regular use of you or any **family member.**"

{¶ 8} The second provision is found in Section V—Exclusions and reads as follows:

{¶ 9} "1. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for **bodily injury** sustained by:

{¶ 10} "a. an insured while **occupying** or when struck by, motor vehicle owned by that **insured** which is not insured for this coverage under this policy."

## Standard for Granting a Motion for Summary Judgment

{¶ 11} Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 12} The standard of review for a motion for summary judgment was generally stated in *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448–449, 663 N.E.2d 639, as follows: Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 628 N.E.2d 1377, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 13} Applying the above to this case requires the court to review the statutory construction of R.C. 3937.18 as it existed both prior to October 2001 and its present version.

## Construction of R.C. 3937.18 Prior to October of 2001

{¶ 14} In *Stanton v. Nationwide Mut. Ins. Co.* (1993), 68 Ohio St.3d 111, 113, 623 N.E.2d 1197, the following appears:

{¶ 15} "The General Assembly determined by enacting R.C. 3937.18 that automobile liability carriers must offer uninsured motorist coverage to their customers. *Watson v. Grange Mut. Cas. Co.* (1988), 40 Ohio St.3d 195, 532 N.E.2d 758. This court has described the purpose behind R.C. 3937.18 in various ways over the years, all of which may be summarized by stating that the uninsured motorist statute is meant to ensure that innocent persons who are injured by negligent uninsured motorists are not left without compensation

simply because the tortfeasor lacked liability coverage. *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309. The statute protects persons who purchase insurance by providing a remedy to them in the event they are injured by uninsured motorists who cannot pay for the damages they cause. By allowing victims of automobile accidents to seek compensation from their own insurance carriers, the statute attempts to place those victims in the same position they would have been had the tortfeasors possessed liability coverage. *Bartlett v. Nationwide Mut. Ins. Co.* (1973), 33 Ohio St.2d 50, 62 O.O.2d 406, 294 N.E.2d 665. In short, the statute is remedial in nature, and is meant to provide a means of compensation to those injured by uninsured motorists."

{¶ 16} Because R.C. 3937.18 was remedial in nature, any ambiguity in the statute was to be construed in such a way as to effectuate the remedy. *Moore v. State Auto. Mut. Ins. Co.* (1999), 88 Ohio St.3d 27, 723 N.E.2d 97. Thus ambiguities in the statute, and in insurance policies drafted pursuant to R.C. 3937.18, were construed to effectuate coverage. Id.

{¶ 17} All of that changed, however, in September 2001. At that time, the Ohio General Assembly enacted amendments to R.C. 3937.18, which were contained in Am.Sub.S.B. No. 97, 149 Ohio Laws, Part I, 779. Senate Bill 97 was enacted and became law on October 21, 2001.

### Statutory Construction of R.C. 3937.18 After Senate Bill 97

{¶ 18} According to the uncodified section 3 of Senate Bill 97, its express purpose was to eliminate the duty on insurers to offer uninsured/underinsured-motorist coverage, to eliminate such coverage being implied in law in any insurance contract, and to provide statutory authority for the inclusion of exclusionary or limiting provisions in policies offering such coverage. Thus, the thrust of Senate Bill 97 was to attempt to limit the power of the judiciary to construe insurance contracts in such a way as to extend coverage that was not expressly agreed to by the parties.

{¶ 19} Pursuant to that policy, the General Assembly enacted the following provision in R.C. 3937.18(I):

{¶ 20} "(I) Any policy of insurance that includes uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under specified circumstances, *including but not limited to any of* the following circumstances:

{¶ 21} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or

replacement motor vehicle covered under the terms of the policy under which the uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages are provided." (Emphasis added.)

{¶ 22} It is the above section that Green is relying on to argue that she is covered under the uninsured/underinsured-motorist section of the Westfield policy. She reads that section as meaning that if a motor vehicle is specifically identified in the policy, then it cannot be excluded from the definition of an uninsured or underinsured motor vehicle if it is owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured. Since the vehicle in which she was riding falls into the category of a vehicle specifically identified in the insurance policy and was either owned by, furnished to, or available for the use of her husband, it cannot be excluded as an uninsured/underinsured vehicle.

{¶ 23} If the italicized language that appears above in the quoted section of R.C. 3937.18 didn't exist, the court would find the argument compelling. Unfortunately for Green, it does exist. This court finds that the above section clearly allows other means of excluding vehicles either owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured. In other words, an insurance company is permitted under R.C. 3937.18 to draft the very exclusion that Westfield drafted in this contract.

{¶ 24} Even if this court found the above-quoted section to be ambiguous, which it doesn't, the court would still be compelled to read the statute as allowing the Westfield provision. It would be compelled to do so because the policy behind the enactment of R.C. 3937.18 is to resolve such ambiguities in favor of not finding implied uninsured/underinsured-motorist coverage.

{¶ 25} Since this court finds that the Westfield insurance policy did not conflict with R.C. 3937.18, the next question becomes whether the policy itself is ambiguous. If it is not, then it is the function of this court in interpreting the contract to give effect to the language of the contract.

### Construction of the Westfield Contract

{¶ 26} The Ohio Supreme Court wrote the following in *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9:

{¶ 27} "The construction of a written contract is a matter of law that we review de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. Our primary role is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898. We presume that the intent of the parties to a contract is within the language used in the written instrument.

*Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. If we are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920."

{¶ 28} Applying the above principles to the Westfield contract, this court finds that the language of the policy is not ambiguous. There are ways that the Westfield contract could have been worded differently and perhaps more clearly, but lack of clarity does not automatically make a contract ambiguous. What makes a contract ambiguous is that the words used are susceptible of different meanings. Here, the words used are not susceptible of different meanings, and the court finds that the exclusion of the Green automobile results from unambiguous language.

{¶ 29} Therefore, the court enters judgment for Westfield on both the first and second causes of action in Green's complaint and finds that there is no right to a class action as set forth in the third cause of action. Judgment is entered for defendant on the plaintiff's complaint and costs are taxed to the plaintiff.

Judgment accordingly.